THOMAS F. KELLEY, Doing Business under the Trade Name and Style of NEW YORK ILLUSTRATED PRESS ASSOCIATION, Respondent, *v.* CHAMPLAIN STUDIOS, INC., Appellant, Impleaded with JOSEPH JACKSON HALSEY, Defendant.

First Department, April 8, 1927.

Joint ventures — action to recover profits under alleged joint venture — verdict for plaintiff against weight of evidence — instructions to jury confusing.

In this action to recover the profits of an alleged joint venture, a verdict in favor of the plaintiff was against the weight of the credible evidence and a joint venture was not proved. The plaintiff claimed that he entered into an agreement with the defendant whereby he was to contribute his time, experience and clientele to procure persons to have their photographs taken at the defendant's studios, and that after the expiration of two years, which was to be the developing period,

the gross receipts were to be divided one-third to the plaintiff and two-thirds to the defendant, but it appears that the plaintiff, although he worked for the defendant under his real name for two years, during which time he was paid a weekly salary in full for his services, now claims that he was also engaged at the same place and time as a joint adventurer under another name.   During the period of his employment he borrowed money from the defendant which he repaid from his weekly salary, and these loans and the repayments, as well as the written receipts signed each week, continued after the end of the second year of employment.   Plaintiff admits that he never made a written demand for a share of the profits, and no written evidence was produced to support his claim.

The instructions to the jury, as a whole, were confusing.

APPEAL by the defendant, Champlain Studios, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 10th day of February, 1926, upon the verdict of a jury, and also from an order entered in said clerk's office on the 19th day of February, 1926, denying said defendant's motion to set aside the verdict and for a new trial made upon the minutes.

The action was discontinued as to defendant Halsey and the judgment is against the corporate defendant only.

*S. Lawrence Miller* of counsel [*Andrew G. Pollock* with him on the brief; *Frueauff, Robinson & Sloan,* attorneys], for the appellant.

*Irving D. Lipkowitz* of counsel [*Cohn & Lipkowitz,* attorneys], for the respondent.

MARTIN, J.   The plaintiff seeks to recover the profits of an alleged joint venture.   The complaint alleges: " In and about the month of February, 1922, the plaintiff and the defendants duly entered into an agreement of joint venture, whereby it was mutually agreed between them that the plaintiff contribute his time, experience and clientele to procure persons prominent in society, art, politics, business, etc., and others to have their photographs taken at the defendants' studios, and the defendants agreed to furnish at their own expense, the studios, cameras, films, help and all things necessary for, and to take, the photographs of such persons so procured by the plaintiff, and to divide the gross receipts derived from sales thereof, one-third to the plaintiff and two-thirds thereof to the defendants   *   *   *."

The case is unusual in that the plaintiff, although he worked for the defendant under the name of Kelley for two years, during which time he was paid a salary every week in full for his services, now asserts he was also engaged at the same place and time as a joint adventurer under the name of T. C. Bigelow.   He says he worked in the studio as Kelley, but in obtaining customers during that

same period he was " T. C. Bigelow, Manager of the New York Illustrated Press Association." According to his testimony he rendered services as T. C. Bigelow separate and distinct from those rendered as Kelley, and not covered by the salary of thirty-five dollars per week, although the services were rendered at the same time and in the same employment or enterprise. For these services rendered as T. C. Bigelow he says the defendant agreed to account to him at the end of two years after February 5, 1922.

The defendant says that the alleged joint venture is an afterthought, and was never mentioned until the plaintiff left the defendant's employment.

The plaintiff went to work for the defendant on February 7, 1922, his duties being to procure persons to have their photographs taken and to help about the studio, pursuant to an oral agreement with Mr. Halsey, the president, made the previous evening. The plaintiff had been out of employment for some time and was so anxious to obtain work that he insisted on starting the following morning. Each week during the two years and five months of his employment he signed receipts in full for services, signing in the name of Kelley. During the same period he borrowed from the defendant various sums of money, aggregating one thousand and twenty-six dollars and ten cents, repaying the loans in five and ten dollar amounts from his weekly salary of thirty-five dollars. Nevertheless he now asserts that he was entitled to one-third the gross receipts. It is important to note that these loans and the repayments from weekly salary, as well as the written receipts signed each week, continued after the end of the second year of employment, the last loan being made to him on April 17, 1924, within three months of his leaving in July, 1924.

The plaintiff admitted that the thirty-five-dollar weekly salary was to pay him for services, but, according to his version of the oral agreement, that paid merely for his helping out around the studio. For procuring persons to come in and sit for their photographs, which appears to have been his sole occupation, he says he was to be paid one-third of the gross receipts derived by the defendant from the sale of finished photographs, and was, moreover, to have for himself all glossy prints, to sell to newspapers and magazines, as well as the original negatives. He places no limitation on the term of the relationship. It was to continue for some years, and defendant was to bear all the expense.

When plaintiff left, Mr. Halsey, the president of the defendant corporation, gave him $100 as a gift. He also received four weeks' notice. It is said that he owed rent for his living room, and Mr. Halsey was helping him to pay that rent.

The plaintiff says that the defendant never accounted to him, although he demanded an accounting at the end of the two-year period, and several times thereafter. No written demands of any kind were made.

It is remarkable that plaintiff, a man without means, was repaying borrowed money out of his thirty-five dollars a week at a time when he says the defendant was indebted to him to the extent of several thousand dollars.

The plaintiff's work consisted of sending letters to people to come to the studio and have their photographs taken. They might or might not give an order, but each received a finished photograph without charge. Defendant's business obtained a certain amount of advertising by having prominent persons sit for their photographs, inasmuch as there was great likelihood that sooner or later these photographs would appear in the public prints marked " Photo by Champlain Studios." The plaintiff also asserts that sales were profitable. These advantages he says flowed to defendant from the joint venture. The defendant could have secured the same advantages without plaintiff's having any proprietary interest in its business. When orders were received by defendant, the plaintiff received slips in writing giving the name of the purchaser, the negative number and the amount of the order. He says this was part of the agreement; but it might have been necessary in order to enable him to keep a proper check on his regular work.

On cross-examination he was interrogated concerning his demands for the accounting. He says that, under the terms of the joint venture, he was to draw one-third of the gross receipts after the expiration of two years, which was to be the developing period; but he admits he never drew anything thereafter and never sent a letter of any kind demanding a share of the profits. His testimony with reference to this agreed period of two years was apparently moulded to fit the situation which developed. It is significant that the plaintiff was unable to produce any written evidence to support the several propositions urged by him.

The court charged the jury that the plaintiff was not suing for services and that there was no release in the case. The court said: " You misunderstood me. I mean he cannot, after signing that acknowledgment, recover anything for services; but I simply tell them, to emphasize what I have already told them, that this case is for something else besides services."

Considering the charge as a whole, we think it was confusing. We are also of the opinion that the verdict was against the weight of the credible evidence and a joint venture was not proved.

The judgment and order appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

DOWLING, P. J., MERRELL, McAVOY and PROSKAUER, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to the appellant to abide the event.